UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES MICHAEL PELLO, <br><br> Plaintiff, <br><br> v. <br><br> PAM COOL, <br><br> Defendant. | CAUSE NO. 3:24-CV-206-JD-JEM |

OPINION AND ORDER

James Michael Pello, a prisoner without a lawyer, is proceeding in this case "against Nurse Pam Cool in her individual capacity for money damages for deliberate indifference to an excessive risk to his safety in violation of the Eighth Amendment when she failed to assist him in the infirmary shower on or about April 19, 2023, causing him to fall and break his elbow[.]" ECF 6 at 5. Nurse Cool filed a motion for summary judgment, arguing Pello did not exhaust his available administrative remedies before filing this lawsuit. ECF 12. Pello filed a response, and Nurse Cool filed a reply. ECF 20, 22. Nurse Cool's summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). However, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality

2

available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Nurse Cool provides an affidavit from the Grievance Specialist at Miami Correctional Facility ("MCF") and Pello's grievance records, which show the following facts: At all relevant times, an Offender Grievance Process was in place at MCF and available to Pello. ECF 15-1 at 2. To fully exhaust a grievance, Pello needed to complete three steps. *Id.* at 2, 11. First, Pello needed to submit a completed State Form 45471, "Offender Grievance" form, within ten business days from the date of the incident giving rise to the complaint. *Id.* at 17. Second, once Pello received a response to his grievance from the Grievance Specialist, he needed to initiate a Level I appeal to the warden by completing a State Form 45473, "Grievance Appeal" form, and submitting the completed form to the Grievance Specialist within five business days from the date of the grievance response. *Id.* at 20. Third, once Pello received a response to his appeal from the warden, he needed to initiate a Level II appeal to the Department Grievance Manager by checking the "Disagree" box on the bottom of the Grievance Appeal form and sign and submit the form to the Grievance Specialist within five business days of the warden's response. *Id.* at 21. Pello's grievance records show he submitted a relevant

3

grievance and a Level I appeal to the warden, but did not properly initiate a Level II appeal to the Department Grievance Manager to fully exhaust the grievance. *Id.* at 5-6.

Specifically, the grievance records show Pello submitted Grievance No. 145624 on April 20, 2023, complaining he fell in the shower and was denied adequate medical care. ECF 15-1 at 5, 24. On June 19, 2023, the grievance office issued a response denying Grievance 145624 on its merits. *Id.* at 5, 27. On June 23, 2023, Pello submitted a Grievance Appeal form to initiate a Level I appeal to the warden ("June 23 Grievance Appeal form"). *Id.* at 5, 29. On June 26, 2023, the warden filled out and signed the "Facility level response" portion of the June 23 Grievance Appeal form, denying the appeal on its merits. *Id.* at 29. On June 29, 2023, the warden returned the June 23 Grievance Appeal form to Pello. *Id.* at 5, 29-30. At that point, in order to initiate a Level II appeal to the Department Grievance Manager, Pello needed to check the "Disagree" box on the June 23 Grievance Appeal form beneath the warden's "Facility level response," sign and date the form, and return the completed form to the Grievance Specialist. *Id.* at 4, 21. But Pello did not follow this procedure. *Id.* at 6, 29. Instead, Pello submitted a *new* Grievance Appeal form on June 30, 2023, attempting to appeal the warden's response to his Level I appeal ("June 30 Grievance Appeal form"). *Id.* at 6, 35.[1] On July 5, 2023, the Grievance Specialist returned Pello's June 30 Grievance Appeal form and informed Pello in writing he needed to "follow policy" to appeal the grievance response by checking "Disagree" on the bottom of the June 23 Grievance

---

[1] The June 30 Grievance Appeal Form was not "completed" because it did not contain the warden's response to Pello's Level I appeal. ECF 15-1 at 35; *see id.* at 29.

4

Appeal form, signing and dating the form, and returning the completed form to the grievance office. *Id.* at 6, 34. On July 17, 2023, the grievance office received the signed and dated June 23 Grievance Appeal form from Pello to initiate a Level II appeal. *Id.* at 6, 32. That same day, the grievance office returned Pello's June 23 Grievance Appeal form as untimely because it was submitted more than five business days after he received the warden's appeal response. *Id.* at 6, 32. The Grievance Specialist attests that, because Pello never submitted a timely Level II appeal to the Department Grievance Manager, the undisputed facts show he did not fully exhaust Grievance 145624. *Id.* at 6.

Here, Nurse Cool has provided evidence Pello did not fully exhaust Grievance 145624, as he never properly initiated a Level II appeal to the Department Grievance Manager. Specifically, the Offender Grievance Process provides that, in order to initiate a Level II appeal, Pello needed to "check the 'Disagree' box" on the June 23 Grievance Appeal form and sign and submit the completed form "to the Offender Grievance Specialist within five (5) business days of the Warden's/designee's appeal response." ECF 15-1 at 21. Pello received the Warden's appeal response on June 29, 2023, but did not follow the procedure to initiate a Level II appeal. Instead, he (1) submitted a *new* June 30 Grievance Appeal form which was not completed and therefore properly rejected by the grievance office; and (2) did not sign and submit his completed June 23 Grievance Appeal form until July 17, after the time to appeal already had expired. The Grievance Specialist was therefore within his discretion to reject both of Pello's Level II appeals as noncompliant with the requirements of the Offender Grievance Process. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance

5

with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"); *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate"); *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (this Circuit takes a "strict compliance approach to exhaustion" by which the Grievance Specialist can "refuse to hear" any case where an inmate does not strictly comply with the written requirements of the Offender Grievance Process). In his response, Pello does not dispute these facts and concedes he did not fully exhaust Grievance 145624. The court therefore accepts that as undisputed. Instead, Pello argues his administrative remedies were unavailable for several reasons.

First, Pello argues his administrative remedies were unavailable because he didn't receive the "Return of Grievance" form from the grievance office until "July 28, 2020." ECF 20 at 5. It's unclear which "Return of Grievance" form Pello is referring to, as the grievance office returned Pello's June 30 Grievance Appeal form on July 5, 2023, for failing to follow procedure, and returned his June 23 Grievance Appeal form on July 17, 2023, as untimely. ECF 15-1 at 32, 34. Regardless, Pello doesn't explain how any delay by the grievance office in returning his Grievance Appeal forms made his administrative remedies unavailable. Specifically, the Offender Grievance Process doesn't provide any deadline for the Grievance Specialist to return an improper Grievance Appeal form. ECF 15-1 at 21. And to the extent the delay in returning Pello's Grievance Appeal form limited his ability to submit a timely appeal, Pello could have

6

explained these circumstances and requested a time limit extension to initiate a Level II appeal. *See* ECF 15-1 at 22 ("If there are extenuating circumstances which caused the offender a delay in submitting the grievance form within the time frames, the offender must document and submit the reason for the delay on a separate piece of paper with signature and date, and include with the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review."). Because Pello did not follow this procedure, he still had available administrative remedies he could have exhausted before filing this lawsuit.

Second, Pello argues the grievance office has a "systemic pattern, practice and custom" of ignoring and improperly rejecting grievances and failing to provide grievance forms and appeal forms. ECF 20 at 6. But there's no evidence the grievance office in this instance ignored or improperly rejected Pello's grievance forms or failed to provide him the necessary forms. Rather, the undisputed evidence shows Pello had access to the proper forms but not did not follow the requirements of the Offender Grievance Process, and the grievance office responded appropriately to each of Pello's filings.

Third, Pello argues he "has a problem with" getting appeal forms in time to submit an appeal within the five-day deadline. ECF 20 at 3; ECF 20-1 at 4-5. But there's no evidence Pello was prevented from submitting a timely appeal in this case. Instead, the undisputed facts show Pello received the warden's response to his June 23 Grievance Appeal form on June 29, 2023, but failed to sign and return that form within

7

five business days. Pello doesn't explain how he was prevented from signing and resubmitting that form within five business days.

Lastly, Pello argues the Grievance Specialist had the discretion to consider his June 23 Grievance Appeal form late. ECF 20 at 3. But there's no evidence Pello complied with the Offender Grievance Process' requirements to request a time limit extension. As noted above, the Offender Grievance Process provides that to request a Time Limit Extension an inmate must "document and submit the reason for the delay on a separate piece of paper with signature and date, and include with the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review." ECF 15-1 at 22. Because Pello did not follow this process, the Grievance Specialist did not abuse his discretion by rejecting Pello's June 23 Grievance Appeal form as untimely.

Accordingly, the undisputed facts show Pello did not exhaust his available administrative remedies because he did not timely comply with the Offender Grievance Process' requirement to submit a Level II appeal to the Department Grievance Manager. Pello has not provided evidence his administrative remedies were unavailable. Therefore, Nurse Cool has met her burden to show Pello had available administrative remedies he did not exhaust before filing this lawsuit. Summary judgment is warranted in her favor.

For these reasons, the court:

(1) GRANTS Nurse Cool's motion for summary judgment (ECF 12);

(2) DISMISSES this case WITHOUT PREJUDICE; and

(3) DIRECTS the clerk to enter judgment in favor of Nurse Cool and against James Michael Pello and to close this case.

SO ORDERED on February 26, 2025

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT